FULMER, Judge.
C.H.S. appeals his adjudication of delinquency, arguing the trial court erred in finding him guilty of possession of marijuana and loitering and prowling. We affirm the adjudication for possession of marijuana but reverse the adjudication for loitering and prowling.
At trial, Officer Fundermark testified that on May 2, 2000, around 2:30 a.m., he was conducting an area check in a vicinity that had experienced a rash of smash-and-grab burglaries in which the front windows of businesses were broken. As he rounded the corner of a Walgreen’s store, he came into contact with C.H.S. and another boy in a secluded but well-lit area behind the store. The officer testified that the boys looked as surprised to see him as he was to see them. C.H.S. took a second look at the officer and immediately began putting something that he had been holding into a garbage can which he was standing beside. *1089 The officer identified himself and asked the boys to put their hands up because C.H.S. was putting something into the trash can and the other juvenile had moved both of his hands behind his back to his waistband. According to Officer Fun-dermark, this “obvious furtive movement” gave him concern for his safety, and therefore he drew his weapon and ordered the juveniles to put their hands up. Another officer arrived to assist while Officer Fun-dermark was handcuffing the boys. Officer Fundermark testified that he handcuffed the boys and detained them for his own safety pending an investigation of loitering and prowling.
Officer Fundermark searched the other juvenile for weapons and located a bag of cannabis in his rear waistband, where the officer feared the boy had placed a weapon. He then went to the area in the garbage can where he had observed C.H.S. place an item. Underneath one article he found a small bag of cannabis. Officer Fundermark testified that he advised C.H.S. of his Miranda[1] rights and asked him to explain his presence in the area at that time. C.H.S. responded that he was “just hanging out” or “chillin.” The officer then asked C.H.S. about the cannabis in the trash can. C.H.S. stated that he did not know anything about it. The officer testified that he arrested the boys for loitering and prowling because “they could not dispel my fear for the well-being of persons and property in the area.” When asked what the boys did to make him fear that any person or property may be in danger, he responded, “They were loitering and prowling near a closed business, which is a common practice for burglars.” He also gave as reasons for his arrest of the boys: their reaction to police presence, the fact that there had been recent smash- and-grab burglaries in the area, and the fact that they could not give any reasonable explanation for being in the area.
C.H.S. first argues that the State failed to prove that he had either actual or constructive possession of the bag of cannabis found in the open garbage can. We disagree. Officer Fundermark did not see the item that was in C.H.S.’s hand before he placed it in the garbage can, but he did see that C.H.S. was holding something. Therefore, in order to prove possession, the State had to present circumstantial evidence that C.H.S. actually possessed the bag. See Davis v. State, 761 So.2d 1154 (Fla. 2d DCA 2000). In a circumstantial evidence case, such as this, the conviction cannot stand unless the evidence is inconsistent with any reasonable hypothesis of innocence. Id. (citing McArthur v. State, 351 So.2d 972 (Fla.1977)). The defense argues that the evidence presented showed only that C.H.S. was in mere proximity to a garbage can containing a bag of cannabis. He further contends that this evidence is consistent with the hypothesis that someone else could have placed the cannabis in the garbage can because the can was in a public place. However, there was more linking C.H.S. to the bag other than his proximity to the spot in which cannabis was found. Although the officer could not identify the item, he observed that C.H.S. had an item in his hand and he watched him put that item in the garbage can in what the officer characterized as a “furtive movement towards a trash can.” The other juvenile was not observed standing at the garbage can with C.H.S. or placing any items in the garbage can. Instead, he was seen placing his hands behind his back. Under these circumstances, it defies logic and common sense to conclude that some unknown person just happened to leave a bag of cannabis in this particular garbage can and that *1090 C.H.S. was simply discarding trash. We affirm the adjudication for possession of marijuana because the circumstantial evidence was consistent with guilt and inconsistent with any reasonable hypothesis of innocence.
C.H.S. next argues that the trial court erred in finding him guilty of loitering and prowling. We agree. In order to obtain a conviction for loitering and prowling, the State must show (1) the accused was loitering and prowling in a manner not usual for law abiding citizens, and (2) the loitering and prowling was under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property located in the vicinity. § 856.021, Fla. Stat. (1999). Alarm is presumed under the statute if the defendant flees, conceals himself or any object, or refuses to identify himself when a law officer appears. State v. Ecker, 311 So.2d 104, 106 (Fla.1975); W.A.E. v. State, 654 So.2d 193, 194 (Fla. 2d DCA 1995).
In D.A. v. State, 471 So.2d 147 (Fla. 3d DCA 1985), the Third District examined the statute and its application in numerous Florida cases and observed that the second element is the heart of the offense. In order to satisfy that element, the defendant’s behavior “must be alarming in nature; that is, it must threaten the physical safety of persons in the area or the safety of property in the area.” Id. at 152. Moreover, it is not enough that the behavior point towards the commission or attempted commission of any type of substantive crime; it must point towards the commission or attempted commission of a crime against a person or a crime against certain property in the vicinity. It must amount to an imminent breach of the peace or an imminent threat to public safety. Id. The D.A. court noted that Florida cases in which loitering and prowling convictions were sustained have uniformly involved incipient criminal situations. The following examples were given:
[I]n Hardie v. State, 333 So.2d 13 (Fla.1976), the convicted defendant was observed at 2:55 a.m. rummaging through two separate cars at a closed gas station, but before he made any move to steal or attempt to steal the cars. In Bell v. State, 311 So.2d 104, 110-11 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975), the convicted defendant was found hiding in the bushes at a private dwelling at 1:20 a.m., but before he made any move to break into or attempt to break into the dwelling. In In re A.R., 460 So.2d 1024 (Fla. 4th DCA 1984), the adjudicated juvenile was observed on two occasions standing on the sidewalk in a high-crime area watching traffic at 10:00-11:00 p.m. while his companion entered fenced car lots, peeked into‘car windows and tried car doors, but before the juvenile made an overt act to aid and abet his companion in the commission of any burglary.
Id. at 150.
In upholding the constitutionality of an earlier version of this statute, the supreme court held that:
[T]he words “under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity” mean those circumstances where peace and order are threatened or where the safety of persons or property is jeopardized. In justifying an arrest for this offense, we adopt the words of the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968): "... the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant” a finding that a breach of the peace is *1091 imminent or the public safety is threatened.
Ecker, 311 So.2d at 108.
The evidence presented against C.H.S. arguably satisfies the first element of the loitering and prowling statute. It is not usual for law-abiding juveniles to be standing behind a closed Walgreen’s at 2:30 a.m. The officer, however, did not articulate specific facts showing an imminent breach of the peace or threat to public safety, nor did the evidence presented constitute such proof. The officer testified that he feared for the safety of persons or property in the area because the boys “were loitering and prowling near a closed business, which is common practice for burglars.” He also noted the boys’ reaction to his presence, the fact that there had been smash-and-grab burglaries in that area, and his conclusion that the boys’ explanation for their presence was not reasonable.
Standing late at night or in the early morning hours in back of a closed business in a high-crime area or an area in which there had been burglaries does not, without more, amount to the crime of loitering and prowling. See J.S.B. v. State, 729 So .2d 456 (Fla. 2d DCA 1999) (concluding there was insufficient evidence of loitering and prowling where officer responded to report of burglary in progress and found empty vehicle in parking lot and juvenile with three men walking around dirt pasture behind the building); K.R.R. v. State, 629 So.2d 1068 (Fla. 2d DCA 1994) (concluding there was insufficient evidence of loitering and prowling where juvenile was found walking on railroad tracks at 12:30 a.m., near site of reported attempted car theft). In the case before us, Officer Fundermark observed no behavior on the part of the boys which would give rise to a finding that there was an imminent threat to any person or property in the area. We recognize that, in this case, alarm may be presumed because C.H.S. concealed an object in the trash can. However, the alarm articulated by the officer was alarm for his own safety because of his fear that the juveniles had weapons. That fear was quickly dispelled upon the officer’s detention of the juveniles and further investigation. And, while it is true that the officer discovered evidence of a crime — possession of marijuana' — this criminal behavior posed no threat to any person or property in the vicinity. Furthermore, the fact that the officer did not think that the boys gave a reasonable explanation for their presence does not provide support for the conviction because an insufficient explanation is not an element of the crime. See K.R.R., 629 So.2d at 1069. The circumstances confronting the officer warranted further investigation but did not constitute proof beyond a reasonable doubt of the offense of loitering and prowling.
Accordingly, we affirm the adjudication for possession of cannabis and reverse the adjudication for loitering and prowling.
CAMPBELL, MONTEREY, (Senior) Judge, Concurs.
ALTENBERND, A.C.J., Concurs specially.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).