921 So.2d 857 (2006)
Gary Clayton RUCKER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-4518.
District Court of Appeal of Florida, Second District.
March 8, 2006.
*858 James Marion Moorman, Public Defender, and Douglas S. Connor, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Gary Clayton Rucker appeals the denial of his motion to suppress statements made following his arrest for loitering and prowling. The motion was found to be dispositive in six pending cases. Because the deputies lacked probable cause to arrest Mr. Rucker without a warrant, we reverse.

Facts
On August 22, 2003, Deputy Lucas, a member of a crime reduction unit focusing on residential burglaries, was on patrol in the Orange River Loop area of Lee County, a designated "hot spot" because of its history of burglaries. Based upon information developed by detectives, Deputy Lucas believed that there were two suspects, a white male and a black male, who drove a white Taurus station wagon. Investigation also revealed a pattern of burglaries in the daylight hours before 1 p.m. while the residents were working or away from home. This information led to the development of two identified suspects, Gary Rucker, a white male, and Melvin Weston, a black male. Prior to their contact on August 22, Deputy Lucas had seen both Mr. Rucker and Mr. Weston.
While on patrol, Deputy Lucas observed a white Taurus station wagon proceeding eastbound in front of his patrol vehicle. Accelerating, he caught up with the vehicle and observed that the driver was a black male. He also realized that the car belonged to Mr. Rucker's mother. The Taurus turned, changed directions, and began traveling away from Deputy Lucas's car. Responding to the Taurus's evasive maneuver, the deputy turned and followed immediately behind it. Again, the Taurus made a turn followed by a U-turn; at this point, Deputy Lucas elected to stop the station wagon.
Deputy Lucas then approached the vehicle and ascertained that Melvin Weston was the driver. Approximately ten minutes later, a backup officer, Deputy More, arrived and advised that he had seen a white male walking on Orange River Blvd., *859 approximately fifty feet away, near a wooded area. This primarily rural neighborhood consisted of homes situated on half-acre lots. Deputy More testified that he did not see the suspect as he left the woods; rather, he first observed him walking down the road.
Deputy Lucas identified the pedestrian as Mr. Rucker. Mr. Rucker's pants were wet from the knee down and his shoes were caked with mud. According to Deputy More, it had rained recently, so everything was wet and the ditches were muddy.
Deputy Lucas thought it was unusual to observe pedestrians in this area in daylight hours. Therefore, upon seeing Mr. Rucker walking down Orange River Blvd. at 11 a.m., he became concerned that burglaries were being committed or about to be committed. At this juncture, it is important to note that neither suspect had, while in Deputy Lucas's presence, committed an illegal act, nor had the deputy observed any items resembling burglary tools.
Because of their concerns, both deputies asked Mr. Rucker what he was doing in the neighborhood at that time of day. Mr. Rucker responded that he was on his way from a nearby convenience store. In response to further questioning, Mr. Rucker indicated that he had remained outside the store, so the clerk probably would not be able to identify him. Concluding that these responses were inadequate, Deputy Lucas arrested Mr. Rucker for loitering and prowling.
At the time of the arrest, Deputy Lucas also knew that Mr. Rucker did not live in the area but in Fort Myers, approximately seven to ten miles away. There had been as many as three burglaries occurring in the neighborhood within the preceding thirty days. When he first saw the Ford Taurus, it was within two miles of the scene of a previous burglary.
Neither the stop of the Taurus nor the questioning of the suspect was undertaken in response to a BOLO received on that date.

Loitering and Prowling
Section 856.021, Florida Statutes (2003), makes it unlawful "to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." Two elements comprise this offense. First, the accused must loiter or prowl in a manner not usual for a law-abiding citizen. This conduct must come close to but fall short of the actual commission or attempted commission of a substantive crime and suggest that a breach of the peace is imminent. Grant v. State, 854 So.2d 240, 242 (Fla. 4th DCA 2003); see also E.C. v. State, 724 So.2d 1243, 1244 (Fla. 4th DCA 1999). Second, the factual circumstances must establish that the accused's behavior is "alarming in nature, creating an imminent threat to public safety." R.M. v. State, 754 So.2d 849, 850 (Fla. 2d DCA 2000). Because the statute requires the creation of an immediate concern, the mere suspicion of future conduct is insufficient. Id.
In this instance, the facts possessed by the deputy did not support a finding of probable cause based on either element of the loitering or prowling statute. As to the first element, Mr. Rucker was walking on a public road in the morning daylight hours, wearing pants and shoes that were wet or muddy. These facts fall far short of constituting the commission or attempted commission of a substantive crime. The record does not disclose whether, at the time of his arrest, Mr. Rucker was near a residence or other private property. There are simply no facts giving rise to a *860 reasonable belief that a crime was about to be committed. We do not disregard the information indicating that burglaries had occurred in the vicinity within thirty days, but standing or walking in a rural residential area, without more, cannot amount to an attempt to loiter or prowl. See Grant, 854 So.2d at 242; C.H.S. v. State, 795 So.2d 1087, 1091 (Fla. 2d DCA 2001).
As to the second element, walking on a public street in broad daylight is not, without more, alarming in nature, nor does it create an imminent threat to the public safety. Mr. Rucker was arrested because he was a viable suspect in previous burglaries. However, the deputies possessed no information that any property was immediately threatened with illegal entry or other harm. The record is silent as to whether Mr. Rucker was stopped in the vicinity of any residential or commercial property. Furthermore, any suspicion created by Mr. Rucker's allegedly unsatisfactory answers to the deputies' questions is irrelevant in the probable cause determination because there was no alarm that Mr. Rucker needed to dispel. R.M., 754 So.2d at 850; W.A.E. v. State, 654 So.2d 193 (Fla. 2d DCA 1995).
Because a violation of the loitering or prowling statute is classified as a misdemeanor, the general rule is that the facts constituting proof of both elements of the crime must occur in the officer's presence. Furthermore, a law enforcement officer may arrest a person without a warrant when the person has committed a felony or misdemeanor in the presence of the officer. § 901.15(1), Fla. Stat. (2003). This court's task is to determine only whether the facts known to the officer constituted probable cause. We hold, as a matter of law, that they did not.

Disposition
Because there was no probable cause to stop and arrest the defendant for loitering and prowling, the trial court erred when it denied the defendant's motion to suppress the statements the defendant made at the time and location of his arrest. However, the trial court did not have the benefit of our legal determination of lack of probable cause when it made its ruling, and the parties did not have the opportunity to develop facts or argument concerning whether the statements the defendant gave subsequent to his transport to the sheriff's office are otherwise admissible. Therefore, we remand for further proceedings consistent with this opinion.
Reversed and remanded.
ALTENBERND and VILLANTI, JJ., Concur.