937 So.2d 1270 (2006)
Dajuan Donya BOWSER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-4158.
District Court of Appeal of Florida, Second District.
October 4, 2006.
James Marion Moorman, Public Defender, and Alisa Smith, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Richard M. Fishkin, Assistant *1271 Attorney General, Tampa, for Appellee.
VILLANTI, Judge.
Dajuan Bowser, who was convicted of delivery of cocaine within 1000 feet of a school and possession of cocaine, appeals the revocation of his probation for violating condition 5 by committing the new offense of loitering and prowling and condition 27 by failing to comply with his community service requirement. We reverse for the reasons discussed below.

Condition 5
Condition 5 required Bowser to live or remain at liberty without violating the law. The proper standard for finding a law violation is whether a preponderance of the evidence establishes that the probationer committed the charged offense. Robinson v. State, 907 So.2d 1284, 1287 (Fla. 2d DCA 2005). "`Proof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking' probation." Id. (quoting Robinson v. State, 609 So.2d 89, 90 (Fla. 1st DCA 1992)).
Here, Bowser was allegedly loitering and prowling in violation of section 856.021, Florida Statutes (2004). Section 856.021(1) makes it unlawful "to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." Essentially, the State must prove two elements to establish the crime of loitering and prowling(1) loitering and prowling in a manner not usual for law-abiding citizens and (2) loitering and prowling under circumstances that threaten the public safety. Von Goff v. State, 687 So.2d 926, 928 (Fla. 2d DCA 1997); E.C. v. State, 724 So.2d 1243, 1244 (Fla. 4th DCA 1999).
As to the first element, a police officer testified that he saw Bowser and three other people in an Ybor City parking lot at about 2:00 in the morning. However, the officer later admitted that most places in Ybor City are open until 3:00 in the morning. Therefore, a parking lot in Ybor City at 2:00 in the morning is not an unusual place for law-abiding citizens to be.
As to the second element, the police officer testified that he watched Bowser and his companions for twenty minutes. He observed them "walking down the street looking into unoccupied vehicles." "They walked all the way down to an area where a parking lot which is very dark," continuing to look inside vehicles. Then, they "cut down behind the college . . . sat on the wall for a while, looked around" and decided to leave. The police officer did not observe Bowser or his companions trying to open any vehicles. When he asked Bowser what he was doing, Bowser said that he was on his way home. When Bowser later identified his home as being in the opposite direction, the officer decided that he did not believe that Bowser was on his way home.
The record reflects no evidence of the required imminent threat to the peace, public safety, or property. The possibly suspicious circumstances of four people looking into cars in a dark parking lot was not sufficient to raise justifiable alarm of an immediate threat. See T.W. v. State, 675 So.2d 1018 (Fla. 2d DCA 1996) (holding that a juvenile's presence near a closed pawn shop at 4:00 a.m. while carrying a chain saw case did not create imminent threat to public safety); R.D.W. v. State, 659 So.2d 1193 (Fla. 2d DCA 1995) (holding that three boys wearing jackets on a warm night, riding bikes, appearing to hide their bikes and jackets in some bushes, and scanning vehicles and people in a parking lot did not constitute an imminent *1272 threat to public safety). The fact that the police officer, after arresting the group, found a screwdriver in the possession of one person does not affect our analysis because the "offense of loitering and prowling must be completed prior to any police action." E.C., 724 So.2d at 1245 (discussing how the possession of a twelve-inch screwdriver gives support to a suspicion of imminent criminal activity only after the fact). The same is true of the police officer's discovery upon questioning Bowser that Bowser seemed to be taking a roundabout route homeit did not create the requisite justifiable and reasonable alarm or immediate concern. See Von Goff, 687 So.2d at 928 ("While the statute gives the suspect an opportunity to explain his presence and conduct, the criminal conduct must be completed prior to any action by police officers.") (quoting E.B. v. State, 537 So.2d 148, 150 (Fla. 2d DCA 1989)).
Therefore, we conclude that the State failed to establish by a preponderance of the evidence that Bowser was loitering and prowling.

Condition 27
Bowser also argues that the State failed to establish a willful and substantial violation of condition 27's requirement that he perform 100 community service hours at the rate of five hours per month. We agree. This court has previously held that "`the omission' from a probation order `of a specified date by which [a probationer] was required to complete [a particular] task' combined with `the fact that [the probationer] was not at the end of his probationary period' results in `the State's inability to prove a willful and substantial violation.'" Shipman v. State, 903 So.2d 386, 387 (Fla. 2d DCA 2005) (quoting Oates v. State, 872 So.2d 351, 353 (Fla. 2d DCA 2004)); see also Bryant v. State, 931 So.2d 251, 253 (Fla. 2d DCA 2006) (holding that "the State cannot prove a willful and substantial violation of a condition to complete community service hours, even when the order contains a per-month rate of completion, when the order does not contain a beginning and ending date for completing the hours and when there is sufficient time remaining for the probationer to complete the required hours at the required rate").[1]
The trial court's probation order did not specify a beginning or end date for Bowser to complete his community service hours. Bowser was serving a three-year probationary term that started in December 2004. His probation officer testified that Bowser was incarcerated from January 4, 2005, until April 4, 2005, but that he had two-and-one-half months during which he could have completed community service April, May, and half of June. On April 27, 2005, Bowser submitted proof that he completed five hours. He did not provide proof of completion of any other community service. However, at the time his probation was revoked, Bowser had over two years remaining on his term during which he could have completed 100 hours of community service at the rate of five hours per month. More than adequate time remained for Bowser to complete his obligation by performing community service at the rate of five hours per month for the requisite number of months. Because the State failed to establish a willful and substantial *1273 violation of condition 27 and a violation of condition 5, we reverse and remand for Bowser's probation to be reinstated.
In the future, trial judges imposing a per-month hour requirement for community service might announce the condition more clearly by specifying a beginning and ending date for completing the hours. Without a beginning and ending date for completion, the State is limited in its ability to prove a willful and substantial violation of probation it can seek to establish a violation of condition 27 only when there is insufficient time remaining for the probationer to complete the required hours at the required rate.
Additionally, we note that it may be wise to update the probation forms to facilitate compliance with the case law to specify a beginning and ending date for completing community service hours. The community service requirement is a special condition for probation. See § 948.031, Fla. Stat. (2004) (indicating that a court may require community service as an additional condition of probation); Fla. R.Crim. P. 3.986(e) (not listing community service as a standard condition of probation). It is a standard condition for community control. Fla. R.Crim. P. 3.986(f) (listing public service as standard condition 11). So, redrafting the forms may require consideration by both the Florida Bar Criminal Procedure Rules Committee and the Criminal Court Steering Committee to insure that forms provided to trial judges throughout the state use appropriate language.
Reversed and remanded for reinstatement of probation.
WALLACE and LaROSE, JJ., Concur.
NOTES
[1] In Eubanks v. State, 903 So.2d 1005 (Fla. 2d DCA 2005), this court found that the trial court did not abuse its discretion when the probation officer was unable to confirm that Eubanks had performed any community service hours during one month of his probation. However, Eubanks does not contain a thorough discussion of the facts, and it does not disclose the important fact of whether there was sufficient time remaining for the probationer to complete the required number of community service hours. Therefore, Eubanks does not guide our analysis on this issue. Rather, we follow the reasoning of Bryant, 931 So.2d 251, and Shipman, 903 So.2d 386.