SILBERMAN, Judge.
 

 In these consolidated appeals, Renaldo R. Ferguson challenges in case number 2D09-276 his convictions and sentences in circuit case number CF08-5918-XX for possession of a firearm by a convicted felon, loitering and prowling, possession of cannabis, and possession of drug parapher
 
 *552
 
 nalia. Ferguson challenges in case number 2D09-326 the revocation of his probation and resulting sentences in circuit court case numbers CF05-4414-XX and CF05-4426-XX on a total of ten offenses.
 

 At issue in both appeals is the denial of his amended motion to suppress evidence on the new law violations in CF08-5918-XX. The new law violations were the basis for revoking his probation in CF05-4414-XX and CF05^4426-XX. Ferguson contends that the trial court erred in denying his amended motion to suppress because Officer Freeman did not have a reasonable suspicion of criminal activity to detain him or probable cause to arrest him for loitering and prowling. Our decision turns on the fact that even if the officer properly detained Ferguson, Officer Freeman did not have probable cause to arrest Ferguson for loitering and prowling and to then search him. We conclude that the trial court should have granted the amended motion to suppress the evidence obtained and statements made as a result of the arrest. Thus, we reverse the convictions and sentences in case number 2D09-276, and we reverse the revocation of probation and sentences in case number 2D09-326 and remand for Ferguson’s probation to be reinstated.
 

 Officer Freeman testified at the suppression hearing that she was on her way to respond to a noise complaint in her marked patrol vehicle when she observed Ferguson standing in the street about two blocks ahead of her. This occurred at 9:30 p.m. in a high-crime area in a residential neighborhood. She saw Ferguson stand in the middle of the road and then move quickly to the west. When she was about a block away, she saw him do the same thing again. When she drove past Ferguson, he was standing between the screen door and the front door of a residence, looking over his shoulder at her. He was not knocking on the door or trying to enter; he was just standing there with his hands down by his sides. Officer Freeman acknowledged that she did not know if he was trying to break into the house or conceal something from her. She decided to turn her vehicle around and make contact with Ferguson. While she was making a U-turn, she saw Ferguson step into the road a third time “and bend over to look under a tree” to see where she had gone. Ferguson watched her while he was moving from one point to another, and his movements seemed to coincide with her movements.
 

 As Officer Freeman turned her vehicle around, Ferguson went back towards the residence door and then hurriedly went to a vehicle parked on the street and started the engine. Just as his car started to move, Officer Freeman turned on her overhead lights and told Ferguson to stop, and he did so. Officer Freeman then saw Ferguson lean over to the passenger side floorboard of his car. She told Ferguson to get out of the car because she did not know if he had a weapon. Ferguson appeared very nervous, and he told Officer Freeman that he was on probation and asked her to please let him go. In response to her question, he stated that he was on probation for burglary. Ferguson gave her an identification card, said he lived in Auburndale, and the identification card reflected that he lived in Auburndale. Officer Freeman advised Ferguson that he was acting quite strangely for a law-abiding citizen and asked why he was there. Ferguson told her that a friend, Tawanna, lived at the residence, that “they” were not home, and that he was checking their door for them. When asked, he told the officer that they did not ask him to check their door.
 

 Officer Freeman had been speaking to Ferguson for twenty to thirty minutes
 
 *553
 
 when several individuals arrived, including Tawanna. Tawanna confirmed for the officer that she lived at the residence in question and that it was normal for Ferguson to visit there, although she had not asked Ferguson to check the door for her. When the officer described the behavior she saw Ferguson exhibit and asked Ta-wanna if that was normal behavior for him, Tawanna replied that it was not.
 

 Officer Freeman testified that the discussions did not dispel her alarm as to why Ferguson was acting the way he was and why he was there, so she arrested him for loitering and prowling. She searched him and found an empty gun holster on his belt; a subsequent search of his vehicle revealed a pistol, cannabis, and paraphernalia. She testified that the search was incident to his arrest.
 

 Section 856.021(1), Florida Statutes (2008), provides, “It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.” However, prior to an arrest for loitering and prowling, the officer must give “the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct.” § 856.021(2).
 

 The offense consists of two elements. The first is that “the accused must loiter or prowl in a manner not usual for a law-abiding citizen. This conduct must come close to but fall short of the actual commission or attempted commission of a substantive crime and suggest that a breach of the peace is imminent.”
 
 Rucker v. State,
 
 921 So.2d 857, 859 (Fla. 2d DCA 2006). The second element is that “the factual circumstances must establish that the accused’s behavior is ‘alarming in nature, creating an imminent threat to public safety.’”
 
 Id.
 
 (quoting
 
 R.M. v. State,
 
 754 So.2d 849, 850 (Fla. 2d DCA 2000)). “An officer must be able to articulate specific facts showing an imminent breach of the peace or threat to public safety.”
 
 Williams v. State,
 
 674 So.2d 885, 886 (Fla. 2d DCA 1996). Under the statute, alarm is presumed “if the defendant flees, conceals himself or any object, or refuses to identify himself when a law officer appears.”
 
 C.H.S. v. State,
 
 795 So.2d 1087, 1090 (Fla. 2d DCA 2001). To arrest Ferguson for the offense, Officer Freeman had to have probable cause that he committed loitering and prowling.
 
 See Rucker,
 
 921 So.2d at 860 (determining that the facts known to the officer did not give rise to probable cause to arrest for loitering and prowling).
 

 Although Ferguson’s conduct may have warranted Officer Freeman initiating contact with him, based on .all of the facts known to her, Officer Freeman lacked probable cause to arrest Ferguson for loitering and prowling. Ferguson stopped driving away when the officer asked him to do so. He identified himself and provided proof of identification and where he lived, and he explained why he was in the area. Tawanna confirmed Ferguson’s identity and acknowledged that it was normal for him to visit the residence. Officer Freeman also had information explaining Ferguson’s desire to avoid contact with law enforcement due to his being on probation.
 

 Further, while Ferguson’s conduct was unusual, the facts do not suggest that a breach of the peace was imminent or that Ferguson’s conduct was close to the commission or attempted commission of a substantive crime. Indeed, Officer Freeman did not articulate specific facts as to an imminent breach of the peace, threat to
 
 *554
 
 public safety, or concern as to any substantive crime. The facts merely show that Ferguson was avoiding an officer who was passing through the area. The facts do not reflect an imminent burglary, trespass, or other crime, or even that Ferguson was unwelcome at the residence.
 

 We recognize that Officer Freeman saw Ferguson reach toward the passenger floorboard when he entered his vehicle and that later, when she arrested him for loitering and prowling, she searched him and found an empty holster on his person and a firearm in the car. Those facts do not affect the determination of whether Officer Freeman had probable cause to believe that Ferguson was loitering or prowling and to arrest him for that crime. “The offense of loitering and prowling must be complete before any police action occurs.”
 
 Stephens v. State,
 
 987 So.2d 182, 184 (Fla. 2d DCA 2008) (citing
 
 Bowser v. State,
 
 937 So.2d 1270, 1272 (Fla. 2d DCA 2006)). That an officer subsequently discovers evidence regarding other crimes does not alter the analysis.
 
 Id.
 

 In
 
 Stephens,
 
 the fact that the officer found a knife in Stephens’ pocket after his arrest did not support the second element of an immediate concern for the safety of persons or property.
 
 Id.
 
 The officer saw Stephens standing in a parking lot behind a closed store in the early morning hours.
 
 Id.
 
 at 188. When the officer drove by, “the man moved into the shadows and ducked behind a parked car.”
 
 Id.
 
 When the officer drove by again, he saw the man discard a small object. The officer stopped the man, who identified himself and told the officer that his uncle lived in the apartment attached to the store. The man walked away, and the officer retrieved the discarded object, a bag containing drugs. The officer arrested the man and found a knife in his pocket in a search incident to arres,t.
 
 Id.
 
 This court reversed the loitering and prowling conviction, determining that the State failed to prove the second element because “Stephen’s mere presence in the parking lot was insufficient to raise an.
 
 immediate
 
 concern for the safety of persons or property.”
 
 Id.
 
 at 184.
 

 The trial court relied in its order and the State relies in its brief upon
 
 Mitchell v. State,
 
 955 So.2d 640 (Fla. 4th DCA 2007). There, the Fourth District, in affirming a conviction for possession of a controlled substance, discussed the loitering and prowling statute, which was the officer’s basis for conducting an investigatory stop.
 
 Id.
 
 at 641. The Fourth District determined that the officer had reasonable suspicion to conduct an investigatory stop and noted that “a defendant’s presence in an area of heavy narcotics trafficking and the defendant’s flight upon noticing police are sufficient to justify the officer’s reasonable suspicion that the individual is involved in criminal activity.”
 
 Id.
 
 at 642 (citing
 
 Illinois v. Wardlow,
 
 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).
 

 Mitchell
 
 does not control the present case because the court did not address whether the officers had probable cause to arrest Mitchell for loitering and prowling. Instead, the court addressed the issue of whether the officers had reasonable suspicion to justify an investigatory stop, concluding that they did. During the stop, Mitchell resisted one of the officers and attempted to dump crack cocaine out of a tube that he was holding.
 

 Here, the determinative issue is whether Officer Freeman had probable cause to arrest Ferguson for loitering and prowling. Based on the facts that she gathered during her investigation, we conclude that Officer Freeman did not have probable cause to make an arrest for loitering and prowling. Thus, the trial court should have granted Ferguson’s amended motion to suppress the evidence gathered during
 
 *555
 
 the search incident to that arrest. Accordingly, we reverse the convictions and sentences in case number 2D09-276 and reverse the revocation of probation and sentences in case number 2D09-326 and remand for Ferguson’s probation to be reinstated.
 

 Reversed and remanded.
 

 CASANUEVA, C.J., and DAVIS, J., Concur.