CORTINAS, J.
M.R. appeals the adjudication of delinquency and final disposition of a loitering and prowling charge under section 856.021, Florida Statutes (2010), following an adjudicatory hearing. Because the State presented sufficient evidence that M.R.’s actions violated the loitering and prowling statute, we affirm.
At the adjudicatory hearing, the State presented testimony from two police officers, Officer Quintero, who first observed M.R., and Detective Mirabal, who arrested M.R. Officer Quintero testified that, on December 8, 2010, while on patrol in his marked K-9 vehicle, he saw M.R. and two other juveniles in a commercial shopping center around 11:30 p.m. All of the businesses were closed and the area was not known for having any activity past 6:00 p.m. Officer Quintero saw M.R. in the alley where the businesses’ back entrances are located, walk up, and pull on one of the business’s rear door handles to see if it would open. After M.R. “finished testing” the door handles, M.R. looked at the top of the building to check for security cameras or other type of video surveillance.
When Officer Quintero approached M.R. in his marked K-9 vehicle with the windows down and the K-9 dog barking, M.R. attempted to conceal himself by hiding behind a dumpster. At that point, Officer Quintero got out of his vehicle, and M.R. began walking away from Officer Quintero at a very fast pace. Officer Quintero gave loud verbal commands for M.R. to return to Officer Quintero’s location for about twenty seconds before M.R. returned. Officer Quintero testified:
Due to [the juveniles’] actions, what I observed during the investigation and the way that they acted once they saw me, obviously, you know, law enforcement in a marked police car, led me to believe that either [sic] a crime was about to be committed. And fear for the safety of the property and the newly [sic] businesses in that area is what caused me to continue my investigation and why I detained them.
Detective Mirabal stated that, after arriving on scene, he separated M.R. from the other juveniles, and read M.R. his Miranda rights. Detective Mirabal testified that M.R. did not “do anything to dispel [his] concern about the property and people’s safety in the area.”
After the State presented its case, M.R. moved for a judgment of dismissal. The motion was denied. Subsequently, M.R. testified that, on the night in question, he was just “hanging out” and “while walking to the gas station which is next door of Wendy’s where we got caught, we were behind Wendy’s when the officer pulled us over.” On August 11, 2011, the trial court found M.R. delinquent of loitering and prowling and withheld adjudication.
On appeal, M.R. argues that the trial court erred by denying M.R.’s motion for judgment of dismissal because the *392 State failed to produce sufficient evidence that M.R. committed the offense of loitering and prowling.[1] We disagree.
Section 856.021, Florida Statutes (2010), provides that “[i]t is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.” § 856.021(1), Fla. Stat. Factors that warrant such alarm or an immediate concern include “the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object.” § 856.021(2), Fla. Stat. However, unless the person flees, or other factor make it impractical, prior to arrest, police officers must “afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct.” § 856.021(2), Fla. Stat.
Pursuant to these statutory requirements, the State must prove two elements: (1) the defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals, and (2) such loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. See §§ 856.021(1) & 856.021(2), Fla. Stat.; see also A.L. v. State, 84 So.3d 1272 (Fla. 3d DCA 2012); Mills v. State, 58 So.3d 936, 939 (Fla. 2d DCA 2011); J.M.C. v. State, 956 So.2d 1235 (Fla. 4th DCA 2007); E.C. v. State, 724 So.2d 1243 (Fla. 4th DCA 1999); L.C. v. State, 516 So.2d 95 (Fla. 3d DCA 1987). Additionally, “[bjecause loitering or prowling is a misdemeanor, both elements of the offense must be committed in the officer’s presence prior to arrest.” J.M.C., 956 So.2d at 1238; see also Grant v. State, 854 So.2d 240, 242 (Fla. 4th DCA 2003).
In order to prove the first element of the offense, the State must prove the defendant “loitered and prowled, which means that he [or she] engaged in incipient criminal behavior which law abiding people do not usually engage in given the time, place, or manner of the conduct involved.” B.J. v. State, 951 So.2d 100, 102-03 (Fla. 4th DCA 2007) (quoting E.C., 724 So.2d at 1244) (internal quotation marks omitted). The defendant’s “conduct must come close to but fall short of the actual commission or attempted commission of a substantive crime and suggest that a breach of the peace is imminent.” Mills, 58 So.3d at 939 (quoting Rucker v. State, 921 So.2d 857, 859 (Fla. 2d DCA 2006)); see also B.J., 951 So.2d at 102 (“The gist of the first element is aberrant and suspicious criminal conduct which comes close to, but falls short of, actual commission or attempted commission of a substantive crime.”) (quoting D.A. v. State, 471 So.2d 147, 151 (Fla. 3d DCA 1985)) (internal quotation marks omitted).
In order to prove the second element of the offense, “the factual circumstances must establish that the [defendant’s] behavior is alarming in nature, creating an imminent threat to public safety.” Mills, 58 So.3d at 939 (quoting Ferguson v. State, 39 So.3d 551, 553 (Fla. *393 2d DCA 2010)). A police officer must be able “to articulate specific facts which when taken together with rational inferences from those facts, reasonably warrant a finding that a breach of peace is imminent or the public safety is threatened.” B.J., 951 So.2d at 103 (quoting G.G. v. State, 903 So.2d 1031, 1033 (Fla. 4th DCA 2005)) (internal quotation marks omitted); see also Grant, 854 So.2d at 242; State v. Ecker, 311 So.2d 104, 110 (Fla.1975) (quoting Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Specifically, “[t]he time, location, and [defendant’s] actions upon discovery of the police satisfy the elements of the offense.” J.M.C., 956 So.2d at 1238. Notably, “alarm is presumed under the statute if the defendant flees, conceals himself or any object, or refuses to identify himself when law enforcement appears.” B.J., 951 So.2d at 102; see also Ferguson, 39 So.3d at 553; Ecker, 311 So.2d at 106 (“[A]larm is presumed under the statute if, when a law officer appears, the defendant flees, conceals himself, or refuses to identify himself.”).
We find that there is sufficient evidence to support the trial court’s conclusion that M.C. committed the offense of loitering and prowling. The State clearly proved the first element. It is unusual for a law-abiding person to be walking behind a closed commercial shopping center at 11:30 p.m. and testing to see whether a closed business’s back door would open by pulling on the door handles. All of the businesses in the complex were closed for the evening and the surrounding property area does not have business or pedestrian activity after 6:00 p.m. M.C. was also seen walking along the complex’s back alley while looking up at the roof for any surveillance equipment. Further, Officer Quintero saw M.C. hide behind a dumpster after he approached in his marked police K-9 vehicle and then begin to quickly walk away from Officer Quintero when he got out of the vehicle. M.C.’s actions, as observed by Officer Quintero, plus any rational inferences to be drawn from them, establish that M.C. was acting in an unusual way at the time and place the police officer encountered him, suggesting a breach of the peace was imminent. Thus, M.C.’s actions were “aberrant and suspicious criminal conduct” that law-abiding individuals do not engage in. See B.J., 951 So.2d at 103 (holding the first element was proven because defendant “was hiding at 1:30 a.m. in the back of a pick-up truck near a closed business that was the subject of a burglary call.”); G.G., 903 So.2d at 1033 (holding the first element was satisfied where “defendant was seen behind shops of a closed plaza at 3:45 in the morning.”); C.H.S., 795 So.2d at 1091 (holding first element was satisfied because “[i]t is not usual for law-abiding juveniles to be standing behind a closed Walgreen’s at 2:30 a.m.”); see also Battle v. State, 868 So.2d 587, 589 (Fla. 4th DCA 2004) (“Lurking in the dark by residences in the wee hours of the morning is unusual for law-abiding persons.”); Stephens v. State, 987 So.2d 182, 184 (Fla. 2d DCA 2008) (finding sufficient evidence of first element where the defendant was in “the parking lot of a closed business in the early morning hours, and when he saw the [police] patrol car he moved into the shadows and crouched behind a car.”).
It is also evident that the State proved the second element. M.R.’s actions, in pulling on the business’ rear door to see if it would open, checking for surveillance equipment, and attempting to flee the scene when Officer Quintero approached is “conduct which comes close to, but falls short of, the actual commission or attempted commission of a substantive crime, and which is ... alarming in nature, pointing toward an imminent breach of the peace or threat to public safety, by coming close to, but falling short of, the actual *394 commission or attempted commission of a substantive crime.” E.C., 724 So.2d at 1244; see also § 856.021(2). M.R. attempted to hide behind a dumpster when Officer Quintero first approached in his marked K-9 vehicle. When Officer Quintero approached on foot, M.R. then attempted to flee the scene and started to quickly walk away from the complex. Although “alarm is presumed when a person flees, conceals himself, or refuses to identify himself,” the officers’ testimony at the adjudicatory hearing articulated specific facts that warranted the finding that there was an imminent concern to the public and surrounding property. B.J., 951 So.2d at 102. Officer Quintero testified that after approaching M.R. in his marked K-9 vehicle, he got out and loudly yelled verbal instructions to M.R. to return to the immediate area. M.R.’s delayed compliance with a police officer’s commands led Officer Quintero to believe that M.R. was in the process of committing a crime or attempting to commit a crime that posed an imminent threat to the surrounding property and the complex’s businesses. Further, Detective Maribal testified that M.C. did not do anything to dispel the officers’ concern that there was an imminent threat to the public property. See C.H.S., 795 So.2d at 1088. Therefore, M.R.’s actions, in pulling on a door handle of a closed business at a time when all of the businesses were closed, attempting to hide and flee the scene when a police officer approached, are all factual circumstances supporting the conclusion that M.R.’s behavior posed an immediate threat to the public safety or surrounding property. See B.J., 951 So.2d at 103 (holding second element is met where defendant was “hiding under circumstances suggesting that the police interrupted a burglary in progress!,]” and where there was a potential threat to public safety if defendant joined a crime in progress or participated “in the aftermath by assisting the escape or disposing of property stolen in the burglary.”); contra Gonzalez v. State, 828 So.2d 496, 498 (Fla. Bd DCA 2002) (holding that the second element was not satisfied where the defendant shined a flashlight into a glass door for five to ten seconds, then left the area, and was stopped by police officer thirteen blocks away); Grant, 854 So.2d at 242 (holding that “standing late at night in the back of a closed business in a high-crime area in which there had been burglaries does not without more, amount to the crime of loitering and prowling.”).
We note that A.L. v. State, 84 So.Sd 1272 (Fla. Bd DCA 2012), is distinguishable. There, A.L. was seen by plain clothed officers in Miami Beach at 7:15 p.m., standing between two apartment buildings and looking through a window. Id, at 1273. However, A.L. was not seen trying to open any of the windows. Id. Though A.L. concealed himself in a nearby staircase, it was for a short amount of time, and when approached by the police officer, A.L. immediately complied with the officer’s request. Id. A.L. then gave officers a reasonable explanation for his presence in the area. Id. at 1274. In reversing, this Court held that, “[ljooking through windows, at this time of day and in this location, without more, is not sufficient to establish that A.L. loitered at a time, in a place, or in a manner unusual for law-abiding individuals.” Id. This Court also noted that the police officers’ testimony did not articulate any specific fact that indicated an imminent concern to public safety.
Unlike A.L., M.R. was seen by a police officer in a marked K-9 vehicle at 11:30 p.m., standing in a commercial shopping center not known for having any business or personal activity past 6:00 p.m., pulling on a business’ rear door handles attempting to see if the door would open. Clearly, M.C.’s behavior is not usual for law-abiding individuals given the time, place, and *395 manner of the conduct involved. See B.J., 951 So.2d at 102-03. Contrary to A.L., M.R. was actively testing the rear door handles of a closed business at 11:30 p.m. in an area not known to have regular business activity at that time. Contra A.L., 84 So.3d at 1274 (“And although A.L. and his companion were seen looking into apartment windows, A.L. did not possess any tools, and the police officers did not observe him trying to pry open any of the windows.”). Further, unlike A.L., M.R. attempted to first hide behind a dumpster when approached by Officer Quintero’s marked K-9 vehicle, and then fled the area after Officer Quintero got out of the vehicle and approached on foot. See B.J., 951 So.2d at 102. Notably, unlike A.L., Officer Quintero’s testimony articulated specific facts that indicated an immediate concern to the surrounding public property, and Detective Mirabal testified that M.R. did not do anything to dispel the officers’ concern.
The State proved that M.R.’s actions violate both elements of the loitering and prowling statute prior to his arrest. Contra E.C., 724 So.2d at 1245 (reversing conviction where the State failed to prove the second element reasoning that the fact that the defendant had a screwdriver, found after a search incident to arrest, could not be used as a reason for suspicion of imminent criminal activity). Here, M.R.’s behavior was unusual for law-abiding citizens under circumstances that warranted an immediate concern for the safety of property and persons. Therefore, M.R.’s conviction must be upheld.
Accordingly, we affirm the trial court’s adjudication of delinquency and final disposition.
Affirmed.

. Though the trial court's denial of M.R.’s motion for judgment of dismissal is reviewed de novo, facts adduced from the evidence are taken as true and “[a]ll reasonable inferences that may be drawn from such evidence must be viewed in a light most favorable to the State.” A.P.R. v. State, 894 So.2d 282, 285 (Fla. 5th DCA 2005) (quoting Espiet v. State, 797 So.2d 598, 601 (Fla. 5th DCA 2001)).