LaROSE, Judge.
S.K.W., a juvenile, appeals her adjudication and disposition of probation for loitering or prowling. See § 856.021(1), Fla. Stat. (2011). Because the evidence is insufficient to establish loitering or prowling, we reverse.[1]
S.K.W. and another girl, A.K.A., were arrested for loitering or prowling in a neighborhood after a resident called the police to report that he had seen two girls walk around the side of a vacant house. The resident saw the girls walking down the street as he was driving home. They were not from the neighborhood. He observed them knock on the door of a neighbor’s house, talk to that neighbor, and then walk over to the vacant house.
Arriving at the scene, Officer Putman saw the two girls walking on the second-floor wrap-around porch from the back of house toward the front entry door.[2] He directed the girls to come down; they complied. Responding to Officer Putman’s questions about their purpose, the girls said that “they were just hanging out.” The girls provided their names and their street addresses, although they could not recall their exact numeric addresses. Neither girl had any drugs or weapons. Each had a cell phone and a cigarette lighter.
Officer Westmoreland arrived as backup. He inspected the house and found no signs of entry, damage, or theft. The officers arrested the girls for loitering or prowling.
*777 Section 856.021(1) defines loitering or prowling as follows:
It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
This conduct must come close to but fall short of an actual offense and suggest that a breach of the peace is imminent. Rucker v. State, 921 So.2d 857, 859 (Fla. 2d DCA 2006) (citing Grant v. State, 854 So.2d 240, 242 (Fla. 4th DCA 2003)). An imminent threat to the safety of persons or property is key. E.B. v. State, 537 So.2d 148, 149 (Fla. 2d DCA 1989) (citing State v. Ecker, 311 So.2d 104 (Fla.1975)); accord Simms v. State, 51 So.3d 1264, 1267 (Fla. 2d DCA 2011). “[T]he mere suspicion of future conduct is insufficient.” Rucker, 921 So.2d at 859 (citing R.M. v. State, 754 So.2d 849, 850 (Fla. 2d DCA 2000)).
The State relies on C.H.S. v. State, 795 So.2d 1087, 1090 (Fla. 2d DCA 2001), for the proposition that alarm is presumed if the suspect flees, attempts concealment, or refuses identification. The State contends that S.K.W. “partially refused to identify herself by withholding her address and phone number from the officer.” But, when Officer Putman asked the girls for identifying information, they gave their names and identified the streets on which they lived. He asked A.K.A., the other girl with S.K.W., for her parents’ phone number, and she stated she did not know. He asked her if her parents’ phone number could be found on her cell phone, and she answered yes. The record does not reflect that S.K.W. refused to provide parental or other information. Officer Put-man specifically stated that the girls did not refuse to identify themselves.
The resident who called the police testified, “I said just send an officer over there and tell them they’re not supposed to be there or slap them on the wrist and send them home. That’s all I wanted to do.” He described the vacant house as “a two-story pink really fancy-looking rich type of a house.” He had never seen the girls before and “they came from out of the neighborhood.” He stated that “one of them appeared to be a black female, thin, and she had a girl with her who was ... Hispanic.” They “were both dressed extremely nice [and] ... didn’t look like they were going to cause anybody any trouble.” In fact, the record tells us that the girls were selling cookies in the neighborhood.
Officer Putman testified that the “area has been hit pretty hard with criminal activity as far as burglary, theft of appliances, mainly air conditioners, scrap metal.” The State argued that the girls were not carrying folders or wearing backpacks that one would expect cookie-sellers to have. Yet, they carried no tools necessary to steal appliances, air conditioners, or scrap metal. The prosecutor asked Officer Putman if he had seen other types of damage result from teens hanging around vacant houses. He answered, “Vandalism, broken windows, busted up property.... You-you worry about drug activity.” As noted earlier, however, the girls had no drugs and the officers found no sign of entry, theft, or damage.
We applaud the quick response and inquiry by law enforcement officers. But, the record does not establish an imminent threat to persons or property. Precedent compels no differently. See, e.g., Bowser v. State, 937 So.2d 1270, 1271-72 (Fla. 2d DCA 2006) (neither “possibly suspicious” circumstances of appellant’s looking into cars in dark parking lot nor officer’s discovery upon questioning that appellant “seemed to be taking a roundabout route *778 home” created requisite concern to establish loitering or prowling); Woody v. State, 581 So.2d 966, 967 (Fla. 2d DCA 1991) (officer’s concern for safety of persons or property upon seeing appellant hiding in bushes “was not supported by any articula-ble facts which could reasonably warrant such a concern ..., [but] was based on pure speculation; there was nothing to suggest any independent criminal activity afoot”); E.F. v. State, 110 So.3d 101, (Fla. 4th DCA Mar.20, 2013) (State failed to meet burden regarding loitering-or-prowling elements based on suspicious behavior of juvenile, not from neighborhood and carrying large satchel and flashlight, walking slowly down street looking into carports and sides of houses in area where recent burglaries occurred); L.C. v. State, 516 So.2d 95, 96-97 (Fla. 3d DCA 1987) (suspicious behavior in high-crime area and insufficient explanation not enough to elicit justified immediate concern for neighborhood safety necessary for loitering or prowling arrest).
The loitering or prowling statute “reaches the outer limits of constitutionality and must be applied with special care.” Carroll v. State, 573 So.2d 148, 148 (Fla. 2d DCA 1991) (citing D.A. v. State, 471 So.2d 147, 153 (Fla. 3d DCA 1985)). “Loitering has long been an offense that occasionally tempts good police officers to exercise power in a manner that is inconsistent with the standards of our free society.” Rinehart v. State, 778 So.2d 331, 335 (Fla. 2d DCA 2000) (Altenbernd, J., concurring). The loitering or prowling statute must not be used as a “catchall provision to detain a citizen and prosecute [her] where there was insufficient basis to convict on some other charge.” Woody, 581 So.2d at 967; accord Simms, 51 So.3d at 1268. The officers had no basis to detain S.K.W. for attempted burglary, or even trespassing. See § 810.09(2)(b), Fla. Stat. (2011); S.N.J. v. State, 17 So.3d 1258, 1259-60 (Fla. 2d DCA 2009) (trespass on unposted land does not occur until trespasser is warned to depart and fails to do so; officer was required to issue trespass warning prior to detention where no-trespassing signs not posted).
On the record before us, we can discover no probable cause to arrest S.K.W. for loitering or prowling. We must, therefore, reverse her adjudication and disposition.
Reversed.
KHOUZAM and MORRIS, JJ., Concur.

. We reject the State’s argument that S.K.W. waived her claim that the evidence was insufficient because her counsel did not move for a judgment of acquittal, but argued only "that the trial court should find that [S.K.W.] did not violate the statute.” The State recognizes, however, that "[S.K.W.’s] claim is not cognizable on direct appeal unless she can show that no crime was committed at all.” See Matheny v. State, 15 So.3d 658, 659 (Fla. 1st DCA 2009) (citing F.B. v. State, 852 So.2d 226, 229 (Fla.2003)). Counsel argued that S.K.W.'s actions were "not a loitering and prowling" and "the elements of loitering [or] prowling simply have not been met in this case.” We will not quibble about the sufficiency of defense counsel’s argument before the trial court. Whether or not counsel waived the claim, we are hard pressed to ignore the admonition that "it would be fundamental error not to correct on appeal a situation where [the defendant] stands convicted of a crime that never occurred.” Nelson v. State, 543 So.2d 1308, 1309 (Fla. 2d DCA 1989) (citing Dydek v. State, 400 So.2d 1255, 1258 (Fla. 2d DCA 1981) ("We can think of no error more fundamental than the conviction of a defendant in the absence of a prima facie showing of the essential elements of the crime charged.”)).

. Our review of the record suggests that the front door was not at street level. It was on a higher level accessed by a staircase on the back or side of the house.