CONNER, J.
R.R. appeals the order adjudicating him guilty of resisting an officer without violence, contending that his motion for judgment of dismissal at trial should have been granted because the arresting officer was not performing a legal duty when R.R. continued to run, even after the officer commanded him to stop. We affirm the adjudication of delinquency.
On December 29, 2011 around 3:00 p.m., a Miami police officer on “Grinch patrol” (working to deter crime around the holidays) observed R.R. walking with another juvenile male in a parking lot between a McDonald’s and a Payless Shoe Store. The officer saw R.R. and his companion look into one vehicle, then into a second vehicle. The officer began to drive toward the two juveniles and intercepted them as they were walking toward his vehicle. In *537 anticipation that the juveniles were going to commit or attempt to commit a burglary-on one of the vehicles, the officer turned on his lights, exited his vehicle, made eye contact, and identified himself by stating, “police, I need you guys to come over here.” Instead, R.R. and his companion ran away. The officer yelled “stop, police” and chased the juveniles in his vehicle. Eventually, the two juveniles split up, and the officer followed R.R. until he was able to apprehend R.R.
R.R. was charged with resisting an officer without violence, pursuant to section 843.02, Florida Statutes (2011). An adjudicatory hearing was conducted by the circuit court in Miami-Dade County. At the close of the State’s case, R.R. moved for a judgment of dismissal. Defense counsel argued that walking through a parking lot and simply looking into two car windows, without touching the car doors, did not give rise to a reasonable suspicion that R.R. had committed a crime. Without reasonable suspicion, the officer was therefore not engaged in the lawful execution of a legal duty when he ordered R.R. to stop. Defense counsel also argued that flight alone is insufficient to form the basis for resisting an officer without violence.
The circuit court reserved ruling on the motion for judgment of dismissal, but implicitly denied the motion when it subsequently adjudicated R.R. delinquent as charged. Jurisdiction over the case was then transferred to Palm Beach County, where R.R. resided, for disposition. Subsequently, the circuit court withheld adjudication of delinquency and placed R.R. on probation.
R.R. argues on appeal that his motion for judgment of dismissal should have been granted. The standard of review is de novo. R.H. v. State, 56 So.3d 156, 157 (Fla. 4th DCA 2011).
To prove the crime of resisting an officer without violence, “the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant’s action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty.” C.E.L. v. State, 24 So.3d 1181, 1185-86 (Fla.2009). “An officer’s command to stop is a lawful execution of a legal duty if there is reasonable suspicion to support the stop.” Palmer v. State, 112 So.3d 606, 607 (Fla. 4th DCA 2013) (citing C.E.L., 24 So.3d at 1186). “Whether an officer’s suspicion is reasonable is determined by the totality of the circumstances which existed at the time of the stop and is based solely on facts known to the officer before the. stop.” State v. Gonzalez, 840 So.2d 401, 403 (Fla. 4th DCA 2003) (quoting Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001)). “For reasonable suspicion justifying a detention to exist, ‘the detaining officer[ ] must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’” Tillman v. State, 934 So.2d 1263, 1273 (Fla.2006) (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). The officer “must be able to articulate something more than an ‘inchoate and unpartic-ularized suspicion or “hunch.” ’ ” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581,104 L.Ed.2d 1 (1989).
Here, R.R. fled before the officer commanded him to stop, but after the officer initially drove toward the juveniles to intercept them, stopped his patrol car, turned on his overhead lights, stepped out of his vehicle, made eye contact, and identified himself by stating, “police, I need you guys to come over here.” We are satisfied that prior to issuing the command to stop, the officer engaged in an investigatory stop, rather than a consensual en *538 counter. See Errickson v. State, 855 So.2d 700, 702 (Fla. 4th DCA 2003) (“Courts have routinely held that an officer’s use of emergency lights ‘evidences an investigatory stop rather than a consensual encounter because the use of emergency lights leads the citizen to believe that he or she is no longer free to leave.’ ”) (quoting Young v. State, 803 So.2d 880, 882 (Fla. 5th DCA 2002)); Houston v. State, 925 So.2d 404, 407 (Fla. 5th DCA 2006); cf. G.M. v. State, 19 So.3d 973, 979 (Fla.2009) (rejecting a per se rule that use of emergency lights constitutes a seizure under the Fourth Amendment, but holding instead that the use of emergency lights is one factor to consider). However, the real issue in this case is whether the officer had a reasonable suspicion necessary to justify a stop when the command to stop was given. Mosley v. State, 739 So.2d 672, 675 (holding that an initial invalid pursuit ripened into probable cause to arrest for resisting arrest without violence based on the defendant’s observed discard of cocaine pipe during chase).
The only reasons articulated by the officer for initially detaining R.R. were his observations, around 3:00 p.m., four days after Christmas, that R.R. and his companion were walking around vehicles in a parking lot and looking into one vehicle and then a second vehicle. The officer did not testify that he saw the juveniles attempting to enter any vehicle, or that the location was a “high crime” area. Based on the facts articulated by the officer, there was no reasonable suspicion of criminal activity to initially justify an investigatory stop.
In the context of loitering and prowling prosecutions, our sister courts have held that looking into windows, without more, is insufficient to raise a reasonable suspicion of criminal activity. See A.L. v. State, 84 So.3d 1272, 1273-74 (Fla. 3d DCA 2012) (holding that two individuals between two apartment buildings pulling themselves up to look into windows at 7:15 p.m. in December was insufficient to establish that the individuals were loitering at a time, in a place, or in a manner unusual for law-abiding individuals); K.H. v. State, 8 So.3d 1155, 1156 (Fla. 3d DCA 2009) (finding that two individuals walking around a parked running pickup truck at 11:00 p.m., putting their hands on the windows, peering in, and walking rapidly away upon observing an officer exiting his vehicle was not a founded suspicion for loitering and prowling); Bowser v. State, 937 So.2d 1270, 1271 (Fla. 2d DCA 2006) (holding that four individuals observed for twenty minutes walking the street at 2:00 a.m. looking into unoccupied vehicles in a very dark area was not sufficient to raise justifiable alarm of an immediate threat); Addis v. State, 557 So.2d 84, 84 (Fla. 3d DCA 1990) (determining that defendant, who looked like a drifter, observed by an officer walking down an alley at 2:40 a.m., looking into parked vehicles, did not justify an arrest for loitering and prowling). If looking into windows in the dark of night, standing alone, is insufficient to establish that a suspect is engaged in behavior unusual for law-abiding citizens and insufficient to raise a justifiable alarm of an immediate threat, it is difficult to discern how such behavior in a parking lot, in the middle of the afternoon, even during the holiday season, can raise a reasonable suspicion justifying an investigatory stop.
The State argues, however, that flight from the police after an officer observes activity consistent with potential auto burglary is, by itself, sufficient to establish reasonable suspicion to conduct a stop, based on C.E.L. In C.E.L., the defendant was arrested after fleeing from officers in a high-crime area and failing to obey their commands to stop. The defendant engaged in no suspicious behavior prior to *539 fleeing from the officer. Concluding it was bound by the U.S. Supreme Court’s opinion in Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), which held an individual's unprovoked, headlong flight from the police in a high-crime area can create sufficient reasonable suspicion to warrant an investigative stop, our supreme court held that the defendant’s continued flight in knowing defiance of the officer’s lawful order to stop constituted resisting an officer. C.E.L., 24 So.3d at 1189. While C.E.L. is distinguishable from the facts of this case, where the officer gave no testimony that the area in which R.R. was observed looking into cars was a “high crime” area, there are legal principles discussed by our supreme court in C.E.L. which are applicable to the resolution of this case.
The court noted that in Wardlow, the U.S. Supreme Court observed that “ ‘[h]eadlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.’ ” Id. at 1185 (quoting Wardlow, 528 U.S. at 124, 120 S.Ct. 673). The court went on to state that the U.S. Supreme Court “concluded that flight from police could be one relevant factor in determining reasonable suspicion.” Id.
More important to our decision is the supreme court’s resolution of a conflict between the Second District’s en banc decision in C.E.L. v. State, 995 So.2d 558 (Fla. 2d DCA 2008), and the decision of the Third District in D.T.B. v. State, 892 So.2d 522 (Fla. 3d DCA 2004), on the issue. of whether section 843.02 requires a reasonable suspicion of criminal activity to exist before an individual flees, when officers first approach a suspect. The supreme court agreed with the Second District that “section 843.02 provides no basis for the interpretation that reasonable suspicion must arise before the flight begins.” C.E.L., 24 So.3d at 1188. More specifically, the court held:
Under the statute’s plain language, it is of no consequence whether the obstructing conduct is initiated before the officer has any legal duty to act. The essential inquiry should instead focus on whether the officer was lawfully executing a legal duty when the obstructing conduct occurred.
Id. at 1188-89.
Although the officer in this case may not initially have had sufficient grounds for an investigatory stop when he exited his vehicle and instructed R.R. and his companion to come to him, once R.R. engaged in an unprovoked, headlong flight from the officer, that behavior, coupled with the officer’s prior observations of R.R. looking into the windows of two parked cars in a parking lot during the holiday season, supplied the officer with sufficient reason to conduct an investigatory stop.[1] When the officer then commanded R.R. to stop, and the flight continued, R.R. committed the offense of resisting an officer without violence.
Having determined that the officer had grounds for an investigatory stop at the time he commanded R.R. to stop, and that the officer was performing a legal duty when the command was given, the circuit court properly denied R.R.’s motion for judgment of dismissal.

Affirmed.

*540 TAYLOR, J., concurs.
KLINGENSMITH, J., concurs in part and dissents in part with opinion.

. Because unprovoked, headlong flight can be one factor establishing a reasonable suspicion of criminal activity, C.E.L., 24 So.3d at 1185, the cases cited above regarding loitering and prowling are distinguishable. None of the cases involving loitering and prowling prosecutions contained facts of an unprovoked, headlong flight.