ALTENBERND, Judge.
Alexander W. McClamma appeals his judgments and orders of probation entered as a result of a negotiated plea after the denial of his dispositive motion to suppress. We reverse. Mr. McClamma’s case demonstrates that a valid arrest for loitering or prowling typically occurs in combination with a Terry[1] stop for a crime that is occurring or is about to occur. But loitering or prowling is not the crime of attempting to commit some other crime. Under the modern statute, a defendant must intentionally commit conduct that the defendant knew or with substantial certainty should have known would cause an objectively reasonable observer to have reasonable alarm or imminent concern that the defendant’s conduct was creating a safety risk for person or property in the vicinity. See § 856.021, Fla. Stat. (2011). This conduct must occur in the presence of the officer who orders the stop. See D.L.B. v. State, 685 So.2d 1340, 1342 (Fla. 2d DCA 1996); Freeman v. State, 617 So.2d 432, 433 (Fla. 4th DCA 1993).
A stop that is only for loitering or prowling must almost always be an arrest for that offense and rarely, if ever, can be justified as a Terry stop for this misdemeanor. There are often times when an officer may engage in a consensual encounter prior to making a loitering arrest or may even conduct a welfare check prior to an arrest for loitering, but the facts of this case do not involve such a preliminary encounter. The sheriffs deputy who ordered the stop of the taxi cab in which Mr. McClamma was a passenger was not performing a Terry stop and did not have an objectively reasonable belief, based on specific and articulable facts, to conclude that the misdemeanor of loitering or prowling had occurred in his presence. See B.A.A. v. State, 356 So.2d 304 (Fla.1978).
I. THE FACTS
At approximately 1:30 a.m. on September 1, 2011, a Pinellas County deputy sheriff was dispatched to a trailer park to handle a report of a suspicious person. The woman who had called in the report told him that she had seen a shirtless, bushy-haired, light-skinned, African-American, male teenager walking suspiciously in the trailer park, which had primarily older residents. The woman had seen the teenager walking between the trailer park office and one of the trailers. She did not report seeing any activity other than a teenager walking late at night. At no time during the events described in this opinion did anyone report any burglary, theft, or other crime in the trailer park. The deputy called in a second deputy with a dog, but the dog could not follow a scent.
There had been a series of burglaries in a nearby commercial area in which other *581 deputies were conducting a stakeout. As a result, the first deputy issued a BOLO for the nearby deputies to be alert for the shirtless teenager. About twenty minutes later, those deputies briefly saw someone run across a street. They thought the person fit the description in the BOLO. They attempted to catch that person without success. The deputies used a dog to track a scent to a nearby residential neighborhood but not to a specific house. A deputy who had seen the person run across the street remained in an unmarked car to observe the neighborhood.
About thirty minutes later, the deputy waiting in the unmarked car observed Mr. McClamma, a tall, tan, white teenager, running from a house to a taxi. He was not wearing a shirt and his clothing otherwise generally matched the description of the African-American teenager who had been seen walking in the trailer park. Accordingly, the deputy arranged for a marked patrol car to stop the taxi. A corporal was involved in the stop. He approached the passenger side of the taxi and immediately questioned Mr. McClam-ma about what he was doing and why he was in the neighborhood. There is no evidence that he provided a Miranda[2] warning to Mr. McClamma prior to this investigation. After questioning him, the deputy ordered Mr. McClamma out of the taxi. He frisked Mr. McClamma for officer safety and found a marijuana pipe in a pants pocket, although he admitted that he had no reasonable suspicion that Mr. McClamma was armed. The corporal concluded that Mr. McClamma had not dispelled alarm and arrested him for loitering or prowling. He took a backpack from Mr. McClamma, which was at some point searched. The deputy, who eventually read Mr. McClamma his Miranda rights prior to a more extensive interview, explained that the pack had been searched before he arrived. The search of the pack revealed illegal contraband. During the interview with the deputy, Mr. McClamma apparently admitted to breaking into several cars in the neighborhood.
Ultimately, Mr. McClamma was charged as an adult with trafficking in hydroeo-done, possession of a controlled substance, three counts of burglary of a conveyance, possession of paraphernalia, and loitering or prowling. Mr. McClamma filed a motion to suppress, challenging his stop. When the trial court denied that motion at the conclusion of an evidentiary hearing, Mr. McClamma entered into a negotiated plea. He agreed to adjudications of guilt for the charged offenses in exchange for terms of probation as a youthful offender, which included drug treatment. When imposing the agreed-upon sentence, the trial court determined that the motion to suppress was dispositive of the charges. Mr. McClamma appealed.
II. INTRODUCTION TO THE LEGAL ANALYSIS IN THIS CASE
The trial court’s decision to deny the motion to suppress hinges on whether the deputy had lawful authority to stop the taxi. The stop of this vehicle, of course, could not be a consensual encounter. The State has never argued in this case that the deputy had a reasonable suspicion, justifying a Terry stop, for a crime other than loitering or prowling. Thus, the disposi-tive issues in this case are whether the deputy had either a lawful basis to arrest Mr. McClamma when he pulled over the taxi or perhaps whether he had a valid basis for a Terry stop for loitering or prowling at that time. In this appeal we accept the historic facts as found by the trial court but review the legal issues de *582 novo. See P.R. v. State, 97 So.3d 980, 982 (Fla. 4th DCA 2012). As a matter of law, we conclude that this stop was unauthorized.
In the 1970s, when Florida made a concerted effort to preserve a constitutionally legitimate misdemeanor of loitering or prowling, the legislature created a statute with an unusual and complex criminal intent and with an odd defense. As a result, the statute can be particularly difficult for law enforcement officers to understand and enforce. To explain why the stop in this case was not authorized, we will first examine the creation of the statute and limitations that the supreme court immediately placed on it to assure its constitutionality. We will then examine the criminal intent required for this offense and the basis for the “defense” of “dispelling alarm.” Next, we will explain why the deputy had no authority to stop the taxi to arrest Mr. McClamma for loitering or prowling. Finally, we will explain why the deputy had no authority to conduct a Terry stop for loitering or prowling in this case.
III. A BRIEF HISTORY OF LOITERING OR PROWLING: A MISDEMEANOR ON THE “OUTER LIMITS” OF CONSTITUTIONALITY
Prior to 1972, Florida had a statute that regulated “rogues and vagabonds,” “common night walkers,” “habitual loafers,” and other “vagrants” on our public streets. See § 856.02, Fla. Stat. (1971). In the early 1970s, the United States Supreme Court began striking down similar ordinances for vagueness and overbreadth. See Palmer v. City of Euclid, Ohio, 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971).
The Florida Legislature responded with the modern loitering or prowling statute, which was based on the Model Penal Code of the American Law Institute. Ch. 72-183, at 414-16, Laws of Fla.; Model Penal Code § 250.6. Except for an amendment to achieve gender neutrality,[3] the current law is the same as the law enacted in 1972. It provides:
(1) It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
(2) Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.
§ 856.021.
Subsection (1) of the statutes creates the substantive requirements of the of *583 fense, which are normally described as having two elements: (1) the defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals; and (2) such loitering or prowling was under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. See State v. Ecker, 311 So.2d 104,106 (Fla.1975).
Subsection (2) describes circumstances that undoubtedly were added in an effort to overcome the anticipated argument that the statute would be vague or overbroad.[4] It also creates a police procedure that allows a person who is stopped for this offense to “dispel” alarm.
The constitutionality of this statute was quickly challenged. In a split opinion, the supreme court held that the statute was constitutional, “subject to the conditions and limitations herein expressed.” Ecker, 311 So.2d at 106.
In explaining its conditions and limitations, the court stated:
In justifying an arrest for this offense, we adopt the words of the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968): “... the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant” a finding that a breach of the peace is imminent or the public safety is threatened.
Id. at 109. We emphasize that the court did not adopt the standard for a Terry stop, i.e., reasonable suspicion, as the standard for use in this context. It merely borrowed the language of “specific and articulable facts” that would “reasonably warrant” as terms to describe not suspicion but, rather, a “finding” (by a judge or jury) that the elements of the offense had occurred.
Although the court did not adopt the standard for a Terry stop in Ecker, the above-quoted language created an interesting parallel. If an officer can point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a finding that a breach of the peace is imminent or the public safety is threatened, then the officer is almost always allowed to a conduct a Terry stop for some other crime in which harm to person or property is an element. Under section 901.151(2), Florida Statutes (2011), an officer can conduct a stop and frisk, i.e., a Terry stop, when the circumstances reasonably indicate that the suspect “is about to commit a violation of the criminal laws of this state.” For an officer, the parallel between loitering or prowling and a Terry stop is undoubtedly confusing because the stop — as an arrest for the substantive offense of loitering or prowling — and the stop — as a procedural investigation of a likely greater offense— become intertwined.
To avoid problems with the Fifth Amendment of the United States Constitution and self-incrimination, the Florida Su *584 preme Court explained that the procedure in the second subsection of the statute is in the nature of an “additional defense to the charge.” Ecker, 811 So.2d at 110. The court explained:
We recognize that a defendant cannot be required to “explain his presence and conduct,” this being constitutionally prohibited. We hold the provision in the statute which affords a person charged thereunder an opportunity to explain his presence and conduct is an additional defense to the charge. Clearly, an accused cannot be compelled to explain his presence and conduct without first being properly advised under Miranda standards. If the accused voluntarily explains his presence and such explanation dispels the alarm, no charge can be made.

Id.

The supreme court’s decision to require a Miranda warning before the defendant is given his or her opportunity to dispel alarm is interesting. As we discuss in greater detail later in this opinion, the elements of this offense must occur in the presence of the officer who orders the arrest. Before the stop is ordered, that officer must observe conduct that creates the requisite alarm in the officer’s mind. Unlike a Terry stop for a possible felony, the officer is rarely, if ever, stopping a loiterer to develop more facts to establish grounds to arrest for loitering.
The Miranda warning is needed because the defendant is in custody for the misdemeanor of loitering or prowling and that offense usually overlaps with a reasonable suspicion of another offense, typically a felony or attempted felony. Thus, a person stopped for prowling because he is hiding in the bushes late at night under alarming circumstances may make a statement while dispelling alarm that is relevant to convict him of a recent burglary. Likewise, in dispelling alarm that he is not a threat to person or property, a defendant may need to explain that he was hiding in the bushes to engage in prohibited use of drugs.
As a result of the limitations placed on this statute by the supreme court in Ecker to avoid its unconstitutionality on the basis of vagueness or overbreadth, there has been a tendency to make every suppression hearing and trial of this offense appear to be an as-applied constitutional challenge to the statute. Relying on D.A. v. State, 471 So.2d 147, 153 (Fla. 3d DCA 1985), the court has explained: “[Bjecause the loitering or prowling statute does not proscribe particular conduct, it reaches the outer limits of constitutionality and must be applied with special care.” Carroll v. State, 573 So.2d 148, 148 (Fla. 2d DCA 1991).
In the next section, we suggest that the “special care” required for this offense can most easily be achieved if the law enforcement officer who makes the stop, and the lawyers and judges thereafter, give close attention to the criminal intent required by this statute and also understand the nature of the defense of dispelling alarm.
IV. THE CRIMINAL INTENT REQUIRED FOR LOITERING OR PROWLING AND THE DEFENSE OF NEGLIGENTLY APPEARING TO BE A THREAT
Because the conduct constituting the misdemeanor of loitering or prowling is usually grounds for a Terry stop for some other offense, it is easy to think of loitering or prowling as the crime of attempting to commit another crime.[5] But an examination of the statute clearly dem *585 onstrates that prowling is not accurately described as a preliminary attempt to commit another crime.[6] As a result, law enforcement officers invariably create problems when they try to justify a stop based on loitering or prowling because they are a little short of the reasonable suspicion needed for a Terry stop for some other offense.
Section 856.021(1) requires the defendant to commit conduct that “warrantfs] a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.” But justifiable and reasonable alarm is not created in a vacuum; it is created in a human mind. Typically, that alarm is created in the mind of a trained law enforcement officer. The limitation that the alarm or imminent concern be “justifiable and reasonable” makes it very clear that the standard is not subjective; the issue is whether an ordinary reasonable law enforcement officer would have alarm for the safety of person or property upon viewing the conduct.
This offense is not a strict liability crime. See generally State v. Giorgetti, 868 So.2d 512, 518 (Fla.2004) (noting that strict liability crimes contain no intent or mens rea requirement); see also State v. Smith, 638 So.2d 509, 511-13 (Fla.1994) (Kogan, J., concurring) (discussing the constitutional and public policy concerns regarding the intent element of criminal acts). To avoid the vagueness and over-breadth of earlier vagrancy statutes, the legislature has clearly created a crime involving a general intent. But that criminal intent, in light of the language of the statute, is not directly an intent to commit some other crime.
Loitering or prowling is actually more similar to the offense of assault,[7] except that the person threatened or alarmed by the conduct is normally unknown to the defendant and not a direct target of the crime. By virtue of the language of the statute and the limitations created by the supreme court in Ecker, the defendant must intentionally commit conduct that the defendant knows or with substantial certainty should know would cause an objectively reasonable observer to have reasonable alarm that the defendant’s conduct is creating an imminent safety risk for person or property in the vicinity. Cf. Pinkney v. State, 74 So.3d 572, 576 (Fla. 2d DCA 2011) (“[T]o satisfy the intent element [of assault] the State must prove that the defendant did an act that was substantially certain to put the victim in fear of imminent violence, not that the defendant had the intent to do violence to the victim.”).
In the express language of the statute, the harm to be prevented by this offense is not the possible harm to person or property; it is the alarm to the observer.[8] Peo- *586 pie, especially trained law enforcement officers, take risks when they think they are called upon to prevent imminent harm to person or property. Efforts to prevent such harm sometimes cause injury to the officers or to bystanders. The legal justification for this offense is a desire to minimize the number of occasions when law enforcement officers suffer this type of alarm. Even if the legislature was attempting to solve another problem, this is the rational basis that renders the statute constitutional.
Accordingly, immediately prior to the arrest, the officer is not actually determining whether the circumstances look like a possible crime in the making. The officer is determining whether he or she is viewing conduct that is reasonably causing the officer alarm or imminent concern that harm to person or property will likely occur in the very near future unless the officer intercedes.
Once a person has been stopped for this offense, the person must be allowed to give a statement to “dispel any alarm or immediate concern which would otherwise be warranted.” § 856.021(2). As explained earlier, the supreme court has described this as a “defense” and requires the officer to provide a Miranda warning prior to the statement.
This defense is a little unusual. The crime has already occurred because the officer has already been alarmed and has already taken at least some of the stressful and dangerous steps necessary to prevent damage to person or property. But the criminal intent for this crime, which is a sufficient intent to permit an arrest, includes intentionally committing conduct that one should with substantial certainty know to create alarm. Thus, the intent required for this offense can occasionally be close to negligent conduct. The defense assures that a person arrested for this offense can be excused from any conviction or penalty by establishing that the person was not in fact intending any such harm.
Hypothetically, assume an elderly woman loves the flowers planted beside her old, wooden home. The local government has a watering ban in place. Although the woman does not want to publicly disobey the law, she wants her flowers to survive. So on a cool evening after dark she puts on her hooded sweater and fills up a large red can to water her flowers. The can is the old gasoline can that her deceased husband once used for the lawnmower. When a police officer drives by and witnesses this person in the dark pouring liquid from a gasoline can next to the house, he quite reasonably believes that the person might be attempting arson. He has justifiable and reasonable alarm for the safety of property. He also has grounds for a Terry stop for attempted arson.
When he questions the old woman after a Miranda warning, if she explains that the can contains water and that she is very sorry for violating the local ordinance, her defense is not a claim that she caused no alarm. Her defense is that she negligently appeared to be creating a risk when she was not in fact creating the risk. Statutorily, so long as the reality of her actions is not what those actions reasonably appear to be, she has a defense to this crime. The officer, of course, conducted a proper and lawful arrest for loitering when he stopped her; the officer simply releases her from a lawful arrest when he or she is convinced by the explanation that dispels alarm.
V. THE ARRESTING DEPUTY COULD NOT ARREST BASED ON A MISDEMEANOR THAT DID NOT OCCUR IN HIS PRESENCE
In this case, we are not entirely clear when the State maintains that the *587 crime of loitering or prowling occurred. This crime is a misdemeanor that must occur in the presence of the officer who orders the arrest.[9] See D.L.B., 685 So.2d at 1342. There is no evidence in this case that the deputy reasonably believed that Mr. McClamma was about to commit immediate harm to person or property while sitting in the back of a taxi. The deputy never articulates any reasonable “alarm” arising from this conduct.
Running from the house or the area adjacent to the house and getting into a taxi might arguably create some level of suspicion that Mr. McClamma had recently committed an offense such as burglary or theft, but it would not create a reasonable basis to believe he was intending to commit harm to person or property in the very near future. Admittedly, the statute suggests that fleeing an officer is an indicator that a person is about to jeopardize the safety of person or property. See § 856.021(2). It is far from clear in this case that Mr. McClamma knew the officer was sitting in the unmarked car or that he was fleeing the officer when he ran to the taxi. Running to catch a taxi at night is not enough to create specific and articula-ble facts creating an objectively reasonable fear that a breach of the peace is imminent.
The act of running across the street at night, assuming that Mr. McClamma is the same person who performed that conduct, is not enough by itself to create such an objectively reasonable fear of harm to person or property. See D.G. v. State, 714 So.2d 644 (Fla. 4th DCA 1998); see also Patmore v. State, 383 So.2d 309 (Fla. 2d DCA 1980). Nor is walking in a trailer park at night outside of the officer’s presence enough to create such fear. The report of such conduct by a citizen might establish some background information that could heighten an officer’s reasonable concern, but it does little by itself. We do not see any way to combine these-events to create a moment in time where an officer could reach the conclusion that he reasonably had alarm for an imminent threat to person or property in the vicinity.
Accordingly, accepting the historic facts as found by the trial court, we conclude that it erred as a matter of law when it concluded that the deputy had the lawful authority to order a stop of the taxi as an arrest for loitering or prowling.
VI. THE ARRESTING DEPUTY COULD NOT CONDUCT A TERRY STOP FOR THIS MISDEMEANOR
The State has never argued in this case that the deputy who ordered the stop of the taxi had reasonable suspicion that an occupant of the vehicle had committed, was committing, or was about to commit an offense that would authorize a Terry stop under section 901.151, with the exception of loitering or prowling. Admittedly, there are numerous cases that discuss whether a law enforcement officer had *588 “reasonable suspicion” to stop a person for loitering or prowling. See, e.g., Mills v. State, 58 So.3d 936 (Fla. 2d DCA 2011); T.R.T. v. State, 982 So.2d 1209 (Fla. 2d DCA 2008). When read, most of those opinions are not actually discussing “reasonable suspicion” in the Terry stop context but, rather, are determining whether the officer obseiwed circumstances giving him an objectively reasonable sense of alarm. As explained earlier, we conclude that it would be very unusual to have a set of circumstances in which a Ten~y stop for loitering or prowling could occur in the absence of grounds permitting a Terry stop for another offense.
In the case of a misdemeanor such as possession of marijuana, an officer may observe circumstances in his presence that create a reasonable suspicion that a person is in possession of marijuana. The officer can temporarily detain the person, not to establish probable cause as one would for a felony, but to establish that the item possessed was marijuana and not a lawful substance. The Terry stop leads to evidence sufficient to establish that all elements of the misdemeanor occurred in the officer’s presence, thereby permitting an arrest.
But in the case of loitering or prowling, the objectively reasonable alarm takes place in the officer’s own mind. Normally, the officer has no need to stop the person to obtain additional facts about the officer’s level of alarm. The questioning at the stop is only the questioning to “dispel alarm,” which occurs after the initial arrest.[10]
Assuming, without deciding, that an officer might on rare occasion be unable to conclude that his or her sense of alarm was objectively reasonable and that the reasonableness of the alarm could be clarified by a conversation with the suspect, it is conceivable that a “reasonable suspicion” of alarm might warrant a Terry stop. In our hypothetical case, for example, if the elderly woman was using a large red can that looked similar to a gasoline can, perhaps the officer could conduct a Terry stop to determine if the can was a gasoline can. Again, presumably this would also be a Terry stop for attempted arson. If the can proved to be a gasoline can, then the stop would transform into an arrest and the woman could dispel alarm by explaining that she was watering her plants.
But the officer in this case did not stop the taxi to get information to clarify his degree of alarm. The State has not and cannot articulate any additional factual information that the officer needed from Mr. McClamma to determine whether his own sense of alarm at that time was objectively reasonable. The officer did not make this stop to develop the final evidence needed to establish that all elements of this misdemeanor had occurred in the officer’s presence. Accordingly, Mr. McClamma’s stop cannot be justified as a Terry stop for the offense of loitering or prowling.
Because the stop was neither a lawful arrest nor a valid Terry stop, the trial court should have granted the dispositive motion to suppress. Accordingly, we reverse the judgments and orders of probation and remand for Mr. McClamma to be discharged.
Reversed and remanded.
SILBERMAN and LaROSE, JJ„ Concur.

. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. See ch. 97-102, § 1384, at 1488, Laws of Fla.

. Two of the three circumstances described in subsection (2) have been limited by case law. The fact that a person "takes flight” may be of consideration, but it does not establish a pri-ma facie case of loitering or prowling. See In re O.W., 423 So.2d 1029 (Fla. 4th DCA 1982); see also Woody v. State, 581 So.2d 966 (Fla. 2d DCA 1991). More significantly, a refusal to identify oneself is limited by the fact that a person cannot be required to provide identification during a consensual encounter, during which the person is always free to leave. See Caldwell v. State, 41 So.3d 188, 195 (Fla. 2010); see also Ecker, 311 So.2d at 110 (requiring a Miranda warning prior to a police investigation at a stop for loitering or prowling).

. See Ira P. Robbins, Double Inchoate Crimes, 26 Harv. J. on Legis. 1 (1989).

.We recognize that many cases describe loitering in this fashion. For example in D.S.D. v. State, 997 So.2d 1191, 1193 (Fla. 5th DCA 2008), the court said: "The gist of the first element is aberrant and suspicious criminal conduct that comes close to, but falls short of, the actual commission or attempted commission of a substantive crime.” We do not disagree that this may be the "gist” of the crime, but this description does not account for the criminal intent that must necessarily underlie this offense. We are not in conflict with those cases; we merely conclude that the legal explanations within those cases are not entirely accurate.

. See § 784.011, Fla. Stat. (2011).

. We recognize that the legislature probably hoped that this statute would prevent harm and stop crime at its inception. However, in order to enact a constitutional statute the legislature relied on the concept of "alarm.” Thus, the primary harm to be avoided under the language of the statute is the alarm.

. There are numerous cases, including cases from the members of this panel, that discuss whether an officer has "probable cause” to arrest someone for loitering or prowling. See, e.g., S.K.W. v. State, 112 So.3d 775 (Fla. 2d DCA 2013); Rucker v. State, 921 So.2d 857 (Fla. 2d DCA 2006). These cases use this phrase loosely. The concept is not the same as the "probable cause” that allows a war-rantless arrest for a felony. An officer who orders the arrest of someone for loitering must have observed all of the elements of the offense or perhaps relied on the observations of a fellow officer. Essentially, that officer needs to have the ability to testily to a prima facie case of the offense when he makes the arrest. In a felony context, probable cause allows the officer, when making a warrantless arrest, to rely on evidence from other witnesses and to arrest before completing an entire investigation. In most, if not all of the cases that discuss probable cause for loitering or prowling, the concept of a "lawful arrest” could be substituted for the concept of "probable cause” without affecting the outcome of the case.

. There is nothing improper with an officer who has concerns that fall short of an objective alarm attempting to engage in a consensual encounter to better define the sense of alarm. Reasonable suspicion is not required for such an encounter.